

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2008

# Vivaritas v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4113

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Vivaritas v. Comm Social Security" (2008). *2008 Decisions.* Paper 1616.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1616

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-4113

———

DAWN VIVARITAS,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 05-04600)
Honorable Faith S. Hochberg, District Judge

———

Argued December 13, 2007

BEFORE:  RENDELL, GREENBERG, and VAN ANTWERPEN, Circuit Judges

(Filed: February 12, 2008)

———

Abraham S. Alter (argued)
Langton & Alter
2096 St. Georges Avenue
Rahway, NJ 07065

   Attorneys for Appellant

Christopher J. Christie
United States Attorney
Som Ramrup (argued)
Special Assistant United States Attorney

Kristina Cohn
Special Assistant United States Attorney
Barbara L. Spivak
Chief Counsel – Region II
Karen Fiszer
Senior Attorney
Office of the General Counsel
Social Security Administration
26 Federal Plaza
New York, NY 10278

    <u>Attorneys for Appellee</u>

---

OPINION OF THE COURT

---

GREENBERG, <u>Circuit</u> <u>Judge.</u>

This matter comes on before this Court on appeal from an order entered in the District Court on August 11, 2006, affirming the final decision of the Commissioner of Social Security denying appellant Dawn Vivaritas' application for social security disability benefits. Vivaritas makes four arguments in support of her appeal. First, she argues that the Administrative Law Judge ("ALJ") failed to inform her adequately of her right to counsel and failed to develop the record adequately in light of her lack of counsel. Second, Vivaritas argues that the ALJ did not predicate her finding that Vivaritas did not satisfy the requirements of listed impairment 12.05(C) on substantial evidence. Third, she argues that the ALJ did not base her finding at the fourth step of the five-step sequential evaluation procedure that Vivaritas retained the residual functional capacity ("RFC") to

perform her past relevant work on substantial evidence. Fourth, Vivaritas argues that the ALJ erred by not relying on a vocational expert at the final step of the five-step sequential evaluation procedure for determining eligibility for benefits.

For reasons that we will discuss, we agree that the ALJ failed to explain adequately to Vivaritas her right to counsel and that Vivaritas therefore did not waive that right knowingly and intelligently. We also agree that the ALJ failed to develop the record adequately with respect to whether Vivaritas satisfied the requirements for listed impairment 12.05(C). We therefore will reverse the District Court's order affirming the Commissioner's denial of benefits and remand this case to the District Court to remand it to the Commissioner to develop the record further. Inasmuch as further development of the record and the ALJ's decision based on that record may make consideration of steps four and five of the five-step sequential evaluation procedure unnecessary, we do not reach Vivaritas' other challenges to the ALJ's decision.

On November 5, 2002, Vivaritas filed an application for social security disability benefits claiming that she became unable to work beginning in October 2002 as a result of migraines, asthma, and depression. The Commissioner denied her application initially and on reconsideration. Vivaritas subsequently filed a request for review by an ALJ that resulted in a hearing on July 15, 2004. The ALJ began the hearing, which Vivaritas attended without counsel, by informing her that she had the right to counsel and asking whether she wished to proceed without representation or adjourn the hearing for 30 days

3

in order to find counsel. Vivaritas chose to proceed without representation. During the hearing, Vivaritas testified to her physical disabilities and to her mental limitations. Based on Vivaritas' testimony concerning her mental limitations, the ALJ requested a consultative examination to evaluate them. In two reports dated October 17, 2004, Dr. Anthony J. Candela reported on the results of Vivaritas' examination, describing her intellectual and psychological condition and documenting her scores on several IQ tests. On April 21, 2005, the ALJ denied Vivaritas' application for benefits. Vivaritas subsequently sought review by the Appeals Council, which concluded that she provided no grounds for a review of the ALJ's decision.

On September 22, 2005, Vivaritas filed this action in the District Court challenging the Commissioner's denial of her application for benefits. On August 11, 2006, the District Court affirmed the Commissioner's denial of benefits. On September 15, 2006, Vivaritas filed a timely notice of appeal to this Court.

The District Court had jurisdiction over this matter pursuant to 42 U.S.C. § 405(g) and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the order of the District Court and over the legal aspects of the Commissioner's decision. See Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Inasmuch as the dispositive issues in this case are legal, we will decide the case on the basis of that standard of review rather than on the usual basis of ascertaining whether there is substantial evidence in the record supporting the Commissioner's decision. See id.

4

Though a claimant does not have a constitutional right to counsel at a social security disability hearing, she does have a statutory and regulatory right to counsel at such a hearing. 42 U.S.C. § 406; 20 C.F.R. § 404.1705. The claimant must be given notice of the right to counsel and can waive this right only by a knowing and intelligent waiver.[1] See, e.g., Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir. 1982). Moreover, where a claimant is pro se, the ALJ has a duty to help the claimant develop the administrative record and "must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003) (internal quotations omitted).

Although an ALJ may deny a pro se claimant benefits, it is appropriate for a reviewing court to remand a case if there is "a showing of clear prejudice or unfairness at the administrative hearing." Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979); see also Livingston v. Califano, 614 F.2d 342, 345 (3d Cir. 1980) ("[I]f it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand, or reversal."). A

---

[1]The Court of Appeals for the Seventh Circuit has stated that "[t]o ensure valid waivers, ALJs must explain to pro se claimants '(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees.'" Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007) (quoting Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1994)). Although we have referred to decisions by other courts of appeals in describing the standards for evaluating social security appeals, we have not required that ALJs explain each of these listed items that the Court of Appeals for the Seventh Circuit case law requires.

determination of whether the claimant waived the right to counsel knowingly and intelligently determines who has the burden of demonstrating whether remand is appropriate. As the Court of Appeals for the Seventh Circuit has explained, "[i]f the ALJ does not obtain a valid waiver of counsel, the burden is on the Commissioner to show the ALJ adequately developed the record." Skinner v. Astrue, 478 F.3d 836, 842 (7th Cir. 2007). "While a claimant represented by counsel is presumed to have made his best case before the ALJ, no such presumption attaches to an unrepresented claimant." Id. "Without the shifting of this burden, no sanction would exist for an ALJ's inadequate explanation of a claimant's rights." Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1994).

In this case, the ALJ began the hearing by acknowledging that Vivaritas did not have counsel and stating: "You know that you have the right to have a representative, but you are not required to have one." App. at 26. The ALJ informed Vivaritas that the notice of the hearing which Vivaritas had received contained a list of possible representatives and that she could provide Vivaritas with an additional copy if necessary. Id. The ALJ then described Vivaritas' right to counsel in the following exchange:

> ALJ:   Let me first explain to you what a representative could do for you. A representative could help you to gather medical records and other documents in support of your case. A representative could help you to organize your case and could help you to present your case before an Administrative Law Judge. There may be representatives that do not charge any money. Have you given any thought to getting a representative?
>
> CLMT:  I was – I went to check into legal aide [sic] because I can't

6

> afford [sic] and they say – I think they're on Summit or something. I was looking for it, but I couldn't find it.

ALJ:   Okay. Well, let me explain to you what your options are today. First, let me tell you that it's perfectly possible to have a fair hearing either with a representative or without a representative. It's purely a personal choice of yours. It – so you have two choices today. You can either choose to proceed today with the hearing without a representative or I could give you an adjournment of 30 days to give you a chance to get a representative. If you choose to proceed today and if I notice during the hearing that there are any documents that are missing from your record that I need, I can take steps through my office to get those and add them to your file. Also, if you proceed today and for some reason you are not happy with the [d]ecision that I make, you would be free to appeal that [d]ecision and you could get a representative at that time if you so chose [sic]. So what is your [d]ecision? Do you want to proceed or do you want to have a chance to get a representative?

CLMT:   Well, I'm going to proceed.

ALJ:   You want to proceed today?

CLMT:   Yeah.

App. at 26-28.

Ordinarily, the foregoing exchange would be sufficient to establish that a claimant waiving her right to counsel during an ALJ hearing acted knowingly and intelligently. In this case, however, Vivaritas later testified at the hearing that she suffered from mental limitations, although the extent of her limitations was unclear at the time of her testimony. When the ALJ asked Vivaritas to describe her mental limitations, she testified:

> Well, I'm a little slower than other people, but I get – manage to get around.

7

That's what it is. I don't – do things the way, you know, other people would do. I'm a little slow at learning things and it's always been that way. That's why I went to special ed[.], but I went to regular high school because they had a special program for that.

*   *   *

At night, I went, so it was like a special thing for the special ed[.] to put them in regular [sic].

App. at 44. Indeed, Vivaritas' testimony prompted the ALJ to request a consultative examination to assess her intellectual and psychological condition. Dr. Candela described the results of that examination as follows:

[Vivaritas] obtained a Verbal IQ score of 72, which has a range of 68 to 78 Verbal IQ points at the 95th percent confidence level. She also obtained a Performance IQ score of 67, with a range of 62 to 76 Performance IQ points at the 95th percent confidence level. These two scores yielded a Full Scale IQ score of 67 with a range of 64 to 72 Full Scale IQ points at the 95th percent confidence level. The indication here is that her range of abilities are within the low borderline range. Clearly Dawn has learning difficulties. Her scores ranged from a low of 3 to a high of 9, indicating the presence of scatter. There was also scatter on an intra-test basis. General vocabulary was limited as well as abstract reasoning.

App. at 205. Although it was an open question during the hearing whether Vivaritas' mental limitations qualified her for disability benefits, her testimony regarding those limitations, particularly when the subsequent evaluation by Dr. Candela supported her testimony, should have given the ALJ concerns as to whether her explanation to Vivaritas of her right to counsel was sufficient and whether Vivaritas' waiver of that right was knowing and intelligent.

In addition to the validity of the waiver of counsel problem, there was a second

8

problem with the ALJ's handling of the case in that she failed to develop the record adequately on the question of whether Vivaritas satisfied the requirements for listed impairment 12.05(C), and whether this failure resulted in clear prejudice to Vivaritas' disability claim. The ALJ found that Vivaritas did not satisfy listing 12.05(C) because "[s]he does not have a mental disorder that is severe enough to impose significant work-related limitations of function that are satisfied by the requirements of medical listing 12.05(C) ." App. at 17.

The Commissioner's regulations provide the following with respect to listed impairment 12.05(C):

> 12.05. <u>Mental retardation</u>: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> *    *    *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). In other words, "[t]o meet the requirements of § 12.05[(C)] a claimant must i) have a valid verbal, performance or full scale IQ of 60 through 70, ii) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and iii) show that the

mental retardation was initially manifested during the developmental period (before age 22)." Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).

Vivaritas satisfied the first and second requirements. With respect to her IQ scores, Dr. Candela reported:

> [Vivaritas] obtained a Verbal IQ score of 72, which has a range of 68 to 78 Verbal IQ points at the 95th percent confidence level. She also obtained a Performance IQ score of 67, with a range of 62 to 76 Performance IQ points at the 95th percent confidence level. These two scores yielded a Full Scale IQ score of 67 with a range of 64 to 72 Full Scale IQ points at the 95th percent confidence level.

App. at 205. In addition, the ALJ found that Vivaritas' asthma and migraines were "severe" pursuant to 20 C.F.R. § 416.920, which describes "severe impairment" as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

The ALJ, however, did not address whether the record supported a finding that the onset of Vivaritas' mental impairments occurred before age 22 as specified in impairment 12.05(c). See app. at 15-23. A claimant seeking benefits pursuant to listed impairment 12.05(C) has the burden of providing evidence showing that the claimed impairment commenced during the developmental period. See Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992). In Markle v. Barnhart, 324 F.3d 182, the Commissioner denied benefits to the claimant based in part on a finding that the claimant did not satisfy the requirements for listed impairment 12.05(C). We reversed the Commissioner's denial of benefits, however, because the ALJ had failed to address whether the claimant's mental

10

retardation had commenced during the developmental period and we wanted to give the ALJ the opportunity to further develop the record and address the issue in the first instance. Id. at 189. We found that the claimant had fulfilled her burden of production sufficiently to warrant remand because the medical evidence did not suggest that retardation originated after age 21, that the claimant had educational problems, including taking special education courses through ninth grade, dropping out in the tenth grade, and struggling to obtain a GED, and that he had not worked for at least 15 years. Id. We also observed that "the evidence before the ALJ [was] consistent with a finding that Markle's mental condition remained constant from childhood through the present, the only change being that his physical condition worsened as the years went by," and that "[t]here is no evidence of a long work history . . . or of a traumatic event that might have induced mental retardation at a later stage of life." Id. at 188-89.

Here, as was true of the claimant in Markle, Vivaritas produced evidence suggesting that her claimed mental impairment had an onset before she reached the age of 22. During the hearing, Vivaritas testified that she attended special education classes while in high school and the ALJ acknowledged in her decision that Vivaritas "attended special education class for many years beginning with grammar school." App. at 18. When the ALJ asked Vivaritas to describe her mental limitations in greater detail, she testified that she was "a little slower than other people" and "a little slow at learning things," and that "it's always been that way." App. at 44. As for the medical evidence,

11

Dr. Candela's report does not indicate whether Vivaritas' intellectual limitations began during her developmental period. See app. 204-10. During oral argument before us, Vivaritas' counsel argued that if he had represented her during the hearing, he would have requested production of her educational records to see whether her IQ test scores prior to age 22 satisfied the severity requirements of listing 12.05(C). The ALJ did not request Vivaritas' educational records, nor did she seek a contemporary medical opinion concerning the onset age of Vivaritas' claimed mental impairments.

For these reasons, we conclude that Vivaritas did not waive her right to counsel during the ALJ hearing knowingly and intelligently and that she clearly suffered prejudice as a result of her lack of counsel. Accordingly, we are constrained to reverse the District Court order of August 11, 2006, affirming the Commissioner's denial of benefits to Vivaritas and to remand the matter to the District Court to remand the matter to the Commissioner to develop the record further. See INS v. Orlando Ventura, 537 U.S. 12, 16, 123 S.Ct. 353, 355 (2002). As a practical matter, we expect that Vivaritas, who has appealed her case with the assistance of highly experienced counsel primarily on the ground that she was prejudiced as a result of her earlier lack of representation, will have counsel on remand, in which event the errors that we have described undoubtedly will be addressed adequately. If Vivaritas decides, however, to proceed without counsel, a course that we hope she does not follow, the ALJ should explain her right to have counsel and counsel's availability in full detail and, if Vivaritas insists on proceeding pro se, the

ALJ should develop the record with respect to the question of whether Vivaritas satisfied the requirements of listed impairment 12.05(C).

The order of August 11, 2006, will be reversed and the matter will be remanded to the District Court to remand the matter further to the Commissioner for further proceedings consistent with this opinion.